**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **HENIA L. ANDERSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. O5-CV-646-TCK-SAJ |
| ) | |
| **REGIS CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss Or, In the Alternative, To Stay Proceedings and Compel Arbitration (Docket No. 12).

**I.     Factual Background**

Plaintiff Henia Anderson ("Plaintiff"), an African-American female, was hired by Defendant Regis Corporation ("Defendant") on December 16, 2003 at a SmartStyle salon in Tulsa, Oklahoma. In conjunction with the commencement of her employment on or about December 16, 2003, Plaintiff executed a document entitled Arbitration Agreement (the "Arbitration Agreement"). The Arbitration Agreement states as follows:

> In consideration of my employment by Regis Corporation or a related organization (the "company"), as well as the company's reciprocal agreement to arbitrate, **I agree that all claims and disputes arising out of or relating to my employment relationship with the company or the termination of that relationship, including the making or interpretation of this Arbitration Agreement, and further including any such claim or dispute that may have arisen before the date of this agreement, shall be decided by binding arbitration in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association.** I understand that this agreement to arbitrate is in lieu of the company's or my right to a court or jury trial.
> The matters subject to this Arbitration Agreement, include, without limitation, all claims and disputes between the company and me arising out of federal, state or local statutes, ordinances or regulations,

> including but not limited to disputes under the Employment Retirement Income Security Act, Title VII of the Civil Rights Act, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act and all other federal, state and local antidiscrimination laws and ordinances, each as may have been amended . . . .

(Def.'s Br. in Support of Mot. to Compel, Attachment 1, Ex. A (emphasis added).)  On or about April 1, 2004, Plaintiff was promoted to salon manager.  At this time, Plaintiff executed a second, identical Arbitration Agreement in conjunction with the promotion.  The documents are referred to collectively as the Arbitration Agreements.  Above Plaintiff's signature on each agreement is the following language: "I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THIS ARBITRATION AGREEMENT AND I AM AGREEING TO ITS TERMS." (*Id.*)

On November 2, 2004, Plaintiff left work to receive emergency medical care regarding her pregnancy. Plaintiff was terminated on December 18, 2004, before she returned to work.  On November 14, 2005, Plaintiff brought eleven causes of action against Defendant as follows: (1) pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) hostile work environment based on pregnancy in violation of Title VII; (3) retaliation related to pregnancy discrimination in violation of Title VII; (4) race discrimination in violation of Title VII; (5) racially hostile work environment in violation of Title VII; (6) retaliation related to racial discrimination in violation of Title VII; (7) race discrimination in violation of 42 U.S.C. § 1981; (8) racially hostile work environment in violation of 42 U.S.C. § 1981; (9) retaliation related to racial discrimination in violation of 42 U.S.C. § 1981; (10) failure to provide COBRA election notices in violation of 29 U.S.C. § 1161, *et seq.*; and (11) intentional infliction of emotional distress.

On December 7, 2005, counsel for Defendant sent a letter to counsel for Plaintiff advising him of the existence of the Arbitration Agreements, providing copies of the Arbitration Agreements,

2

and requesting that Plaintiff dismiss the action and pursue the claims in arbitration. By letter of December 11, 2005, Plaintiff's counsel notified counsel for Defendant that Plaintiff would not dismiss the case. Based on the two Arbitration Agreements signed by Plaintiff, Defendant has moved the Court to compel arbitration and dismiss or stay these proceedings pursuant to 9 U.S.C. § 2-4 and Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**II.    Discussion**

"The Federal Arbitration Act, 9 U.S.C. § 3, requires a district court to stay judicial proceedings where a written agreement provides for the arbitration of the dispute that is the subject of the litigation." *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995). In considering whether to compel arbitration, the Court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the subject matter of the dispute is covered by the arbitration agreement. *See Pierce v. Kellogg, Brown & Root, Inc.*, 245 F. Supp. 2d 1212, 1215 (E.D. Okla. 2003) (citing *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1515-16 (10th Cir. 1995)). The eleven causes of actions asserted in this matter are clearly "claims and disputes arising out of or relating to [Plaintiff's] employment relationship with the company or the termination of that relationship" and are therefore covered by the Arbitration Agreements. (*See* Def.'s Br. in Support of Mot. to Compel, Attachment 1, Ex. A.)

The issue raised by Plaintiff relates to the first element - whether a valid agreement to arbitrate exists. Plaintiff argues the entire agreement is unenforceable and that the motion to compel should be denied. Plaintiff argues that this Court, and not the arbitrator, has the power to determine whether the Arbitration Agreements are generally enforceable; the Arbitration Agreements are unenforceable because they deprive Plaintiff of statutory rights, their terms are unconscionable, they

3

were drafted to secure an illegal object, and they are void under Oklahoma public policy; and unenforceable provisions of the Arbitration Agreements are not severable. The terms of the Arbitration Agreements alleged to be unenforceable include the attorney's fees clause, the fee-splitting provision, the limitations on remedies, the shortened statute of limitations, and the requirement to adhere to the American Arbitration Association's confidentiality clause.

  A.  <u>Proper Forum for Determination of Enforceability</u>

As an initial matter, the Court must determine whether this Court or an arbitration proceeding is the proper forum to determine the question of the enforceability of the Arbitration Agreements. As a general rule, the court, and not the arbitrator, determines "gateway matters, such as whether the parties have a valid arbitration agreement at all." *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995) (explaining that unlike the question of the *scope* of a valid arbitration agreement, for which all doubts are resolved in favor of arbitration, the question of *who* should decide arbitrability is resolved against arbitration); *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219-20 (10th Cir. 2002) (normal presumption in favor of arbitration disappears when parties dispute existence of valid arbitration agreement); *Barker v. Golf USA, Inc.*, 154 F.3d 788, 791 (8th Cir. 1998) (plaintiff's claim that arbitration agreement violated public policy and was unconscionable must be decided by the court); 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.").

The Tenth Circuit follows the general rule that courts are to determine the question of enforceability. In *Shankle v. B-G Maintenance Mgmt. of Colo.*, 163 F.3d 1230 (10th Cir. 1999), the plaintiff argued that an arbitration agreement in an employment contract was unenforceable based

on a fee-splitting provision that deprived him of statutory remedies under Title VII. The district court decided the question of whether the arbitration agreement was unenforceable. On appeal, the defendant argued that the arbitrator, and not the court, should have decided the issue of enforceability. The Tenth Circuit stated: "We agree the scope of judicial review of arbitration agreements is limited. However, it is within the court's power to consider the arbitrability of a petitioner's claims . . . and to consider 'whether legal constraints external to the parties' agreement foreclosed the arbitration of [statutory] claims.' Therefore, the district court properly considered the arbitrability of Mr. Shankle's claims." *Id.* at 1235 (citations omitted). Thus, under the general rule and Tenth Circuit precedent, this Court, and not an arbitrator, would normally decide the gateway question of enforceability being raised by Plaintiff in this case.

However, Defendant contends this case presents an "exception" because the parties have "contracted around" the general rule by including the following language in the Arbitration Agreements: "I agree that all claims and disputes arising out of or relating to my employment relationship, *including the making or interpretation of this Arbitration Agreement* . . . shall be decided by binding arbitration in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association." (*See* Def.'s Br. in Support of Mot. to Compel, Attachment 1, Ex. A. (emphasis added).) Defendant relies on the case of *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995), in which the Supreme Court stated that the question of who has the power to decide arbitrability turns on what the parties specifically agreed "as to *that* matter" and that the question of arbitrability may be decided by an arbitrator if there is "clear and unmistakable evidence" that the parties agreed to do so. *Id.* at 944. In *Kaplan*, the Court determined that the defendant had not presented such clear and unmistakable evidence. The only

5

case cited by Defendant where a court did not follow the general rule is *Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005). In that case, the court compelled arbitration of the issue of enforceability because the arbitration agreement incorporated the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). Such rules provide that the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections to the validity of the agreement.[1] The parties in *Terminix* were both sophisticated business entities. Defendant has not cited a case holding that contract language similar to that presented here in a standard employment contract constitutes "clear and unmistakable evidence" of the parties' intent to arbitrate the "gateway" question of enforceability. In this Court's view, language inserted on a standard form employment contract that an employee must sign as a condition of employment does not evidence the employee's "clear and unmistakable" intent to allow questions going to enforceability of the agreement to be decided by the arbitrator. Instead, the Court will follow the general rule and determine the issue of whether the Arbitration Agreements are enforceable.

B.  Enforceability of Specific Provisions of the Arbitration Agreements

The language at issue in this case appears in two documents entitled "Arbitration Agreement," which were entered into by Plaintiff and Defendant, one upon her hiring and one upon

---

[1] In this case, the parties incorporated the National Rules for the Resolution of Employment Disputes ("NRRED") of the AAA. The Court has examined these rules and has been unable to find any provision similar to that in the Commercial Arbitration Rules expressly allowing the arbitrator to determine objections to validity. Indeed, Defendant does not make this argument but instead relies on the contract language.

6

her promotion.[2] Arbitration agreements in employment contracts are generally enforceable. *Circuit City Stores Inc. v. Adams*, 532 U.S. 105 (2001). Agreements that require arbitration of statutory claims, including the Title VII claims at issue here, are also generally enforceable. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); *Gambardella v. Pentec, Inc.*, 218 F. Supp. 2d 237, 244 (D. Conn. 2002) (listing cases extending *Gilmer*'s reasoning to statutory federal employment law claims). However, the rule set forth in *Gilmer* is "not without limits." *See Shankle v. B-G Maintenance Mgmt. of Colo.*, 163 F.3d 1230, 1234 (10th Cir. 1999). "An arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum." *Id.* Thus, an arbitration agreement may be unenforceable where its "terms . . . actually prevent an individual from effectively vindicating his or her statutory rights." *Id.* Plaintiff essentially argues that the Arbitration Agreements are unenforceable because they contain terms that would prevent Plaintiff from fully and effectively vindicating her statutory rights.[3] The Court will discuss each challenged provision in turn.

    1.    *Attorney Fee Provision*

The Arbitration Agreements state that "[e]ach party shall be responsible for its own attorney

---

[2] The sole function of these agreements relates to arbitration of claims. Thus, Plaintiff's attack on enforceability in this case relates solely to the agreement to arbitrate and not to the validity of an underlying agreement that includes an arbitration provision. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (holding that a federal court may consider only issues relating to the making and performance of the agreement to arbitrate, and not issues relating to the making of the underlying contract).

[3] Plaintiff also argues the Arbitration Agreements are unconscionable under Oklahoma contract law and void under Oklahoma public policy. Because the Court finds that the Arbitration Agreements are unenforceable due to their limits on federal statutory rights, as the Tenth Circuit did in *Shankle*, the Court does not expressly reach the separate, but related, question of whether the Arbitration Agreements are unconscionable or void under Oklahoma law, except to the extent necessary in its conclusion regarding severability.

7

or other representative fees and costs." Plaintiff urges the Court to follow precedent refusing to enforce arbitration agreements containing similar clauses. *See, e.g., McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 685 (7th Cir. 2002) ("[T]he clause here purports to forfeit McCaskill's statutory right to attorney's fees, a remedy that we have already recognized is essential to fulfill the remedial and deterrent functions of Title VII. Because the provision prevents her from effectively vindicating her rights in the arbitral forum by preemptively denying her remedies authorized by Title VII, the arbitration agreement is unenforceable."); *Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244 (9th Cir. 1994); *Perez v. Globe Airport Sec. Services, Inc.*, 253 F.3d 1280, 1286 (11th Cir. 2001) (opinion withdrawn due to dismissal of case by parties); *Gambardella v. Pentec, Inc.*, 218 F. Supp. 2d at 245-47 (listing district court cases ruling that arbitration agreements requiring each party to bear his own attorneys' fees are void as against public policy). Defendant urges the Court to follow precedent from the First, Third, and Eight Circuit Courts of Appeal, which have ruled that arbitration is the correct initial forum for a plaintiff to air objections to attorneys' fees provision in an arbitration agreement. *See, e.g., Thompson v. Irwin Home Equity Corp.*, 300 F.3d 88, 92 (1st Cir. 2002); *Great Western Mortgage v. Peacock*, 110 F.3d 222, 230-31 (3d Cir. 1997).

Based on the Tenth Circuit's decision in *Shankle*, and this Court's view of the role of a court in determining initial issues of arbitrability in an employer/employee arbitration agreement, the Court rejects Defendant's argument that this Court must submit the question of the enforceability of the attorney fee provision to an arbitrator. Further, the Court adopts the reasoning in *McCaskill* and other cases ruling that a clause limiting a plaintiff's rights to statutory attorney fees renders an arbitration agreement unenforceable because it prevents a plaintiff from effectively vindicating her

rights in the arbitral forum.[4]

### 2. *Fee-splitting provision*

The Arbitration Agreements state that "[e]ach party shall bear an equal share of the arbitrator's fees and administrative fees of arbitration *unless I can show that such a sharing would be likely to result in my incurring prohibitive costs*." (*See* Def.'s Br. in Support of Mot. to Compel, Attachment 1, Ex. A. (emphasis added).) The Tenth Circuit has held that fee-splitting provisions render an employee/employer arbitration agreement unenforceable as a matter of law. *See Shankle*, 163 F.3d at 1234-35. The court reasoned that, by requiring an employee plaintiff to pay the average costs of arbitration, which the court estimated to be between $1,875 and $5,000, the arbitration agreement rendered the arbitration forum inaccessible and undermined the remedial function of the federal anti-discrimination laws. *See id.* After *Shankle*, the Supreme Court decided the case of *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000). In *Green Tree*, the Court ruled that an arbitration agreement was not unenforceable merely because it was silent as to who would bear arbitration costs and that a mere "risk" that a party would be subject to prohibitive costs was too speculative to justify invalidation. *Id.* at 90. Thus, as this Court has previously reasoned, "the possibility that a claimant could be required to pay a share of the arbitration costs, including part of an arbitrator's fees, is not, by itself, a sufficient reason to invalidate an arbitration clause prior to arbitration." *See Jones v. KOTV*, 01-CV-49-K(J) (unpublished).

In this case, the agreement is not silent but instead expressly requires the splitting of fees and

---

[4] The attorney-fee provision, standing alone, is sufficient to invalidate the Arbitration Agreements at issue. The Court will proceed with discussion of the other challenged provisions because the Court must consider the agreement as a whole in its analysis of the severability clause.

would normally be unenforceable under *Shankle* and *Green Tree*. However, the fee-splitting provision also contains an "unless" clause, which allows an employee the opportunity to show the arbitrator that fee-splitting would result in incurring prohibitive costs. Defendant argues this "unless" clause saves the fee-splitting provision because it tracks the *Green Tree* test, which was adopted by the Supreme Court after *Shankle*. To the Court's knowledge, the question of whether such an "unless" clause can save an otherwise enforceable fee-splitting provision presents an issue of first impression.

After *Green Tree*, courts have stated that "the appropriate inquiry [in analyzing the enforceability of a fee-splitting provision] is whether plaintiff has shown that the costs of arbitration are likely to be prohibitive." *See, e.g., Gambardella*, 218 F. Supp. 2d at 245. Thus, the "unless" clause essentially tracks the Supreme Court test but authorizes the arbitrator, rather than a district court, to make the determination of whether a plaintiff can make a showing of prohibitive costs. The problem with the "unless" clause is that an employee is deprived of the right to have the question of prohibitiveness determined by a court in the first instance. One court has, in fact, expressed specific concern about the "initial [arbitration] filing fee, which may range from $500 up to thousands of dollars and must be paid in advance by the filing party" and about administrative fees charged for each day of an arbitration hearing. *See Lelouis v. Western Directory Co.*, 230 F. Supp. 2d 1214, 1223 (D. Or. 2001). The Tenth Circuit in *Shankle* expressed general concern about an employee being placed "between the proverbial rock and a hard place - it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum." *Shankle*, 163 F.3d at 1235. Thus, while the "unless" clause does track the Supreme Court's "prohibitive cost" test, it does not alleviate the problem of

depriving the employee of the cheaper judicial forum in the first instance. Instead, an employee could be saddled with prohibitive filing fees and administrative fees before ever having the opportunity to present his "prohibitive cost" argument to an arbitrator. He also faces a risk that he will lose this argument in arbitration. This risk could prevent the filing of the grievance at all. For these reasons, the Court concludes that the "unless" clause does not save the fee-splitting provision or alleviate the problems presented by fee-splitting provisions.

Based on *Green Tree*, the Court must determine whether Plaintiff has in fact made a showing that the costs will be prohibitive before finding the fee-splitting provision to be unenforceable. Plaintiff has submitted an Affidavit stating that she is employed as a Customer Services Representative earning less than $1,100 per month, that she is caring for three children and two grandchildren, that her entire salary goes to household expenses, and that it is unlikely she would be able to pursue her claims in arbitration due to the costs. (Plf.'s Resp. to Def.'s Mot. to Dismiss, Ex. C, ¶¶ 6-9.) Plaintiff has also submitted a quotation from the AAA website, which sets forth two alternative fee structures for employment disputes, depending on whether the arbitration agreement is an "employer-promulgated plan" or an "individually negotiated employment agreement." (*See id.* at ¶ 4.) The Court is uncertain which category would apply to the Arbitration Agreements at issue here, but must assume the maximum amount of fees for purpose of the analysis, which would be an initial filing fee "ranging from $750 for claims below or up to $10,000 to several thousand dollars for claims in the millions." The Court is satisfied that Plaintiff has made a showing that splitting fees for the arbitration would be cost prohibitive and that the fee-splitting provision is unenforceable as applied to Plaintiff's financial circumstances.

3.     *Limitation of Remedies*

The Arbitration Agreements state, "*To the extent permitted by law*, any arbitration award shall not include punitive damages and shall be limited solely to the claimant's actual damages." (*See* Def.'s Br. in Support of Mot. to Compel, Attachment 1, Ex. A (emphasis added).) But for the limiting language in the first clause, the provision would be unenforceable because it limits the full range of statutory rights under Title VII and other federal anti-discrimination laws, such as punitive damages, back pay, front pay, and other remedies. *See, e.g., Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244, 1247 (9th Cir. 1994). However, Defendant again argues that it has included "saving" language because the arbitrator can only apply the provision to the extent the provision is "permitted by law."

A limitation that excludes punitive damages, back pay, front pay, and other remedies available under federal antidiscrimination law is not, in fact, "permitted by law." Thus, this provision would serve no functional purpose in the context of Plaintiff's discrimination claims. It is, in effect, a nullity by its own language, places no real limits on the arbitration of Plaintiff's claims, and cannot be invoked by Defendant in the arbitration as a limitation of remedies. Therefore, while the provision without the limiting language is unenforceable, the "permitted by law" clause renders the provision of little significance when applied to this case.

4.     *Statute of Limitations*

The Arbitration Agreements provide that "I understand that I must commence my arbitration within one year of a claim arising, and that any claim or dispute not started within the applicable time shall be considered waived." (*See* Def.'s Br. in Support of Mot. to Compel, Attachment 1, Ex. A.) This provision has the effect of reducing Plaintiff's time to bring her state tort claim and her

federal civil rights claim arising under 42 U.S.C. § 1981. Plaintiff did, however, file her claim within one year in this case. Further, the AAA rules provide where a claim involves statutory rights, an arbitrator must follow the time limit established by statute. AAA Rule 4.a.(i)(1). While this type of provision may be unenforceable in some circumstances, it does not have a significant impact on this case.

### 5. *AAA Confidentiality Rules*

Plaintiff also argues that certain AAA confidentiality rules, which are incorporated into the Arbitration Agreements, are unenforceable because they restrict publication of the parties' identities and awards. In *Luna v. Household Finance Corp. III*, 236 F. Supp. 2d 1166, 1180-81 (W.D. Wash. 2002), the court explained that employers that are repeat arbitration participants may gain advantages over employees and that a lack of public disclosure favors companies over individuals. Again, these rules do not have a large impact on this case because Defendant has not arbitrated any disagreements against employees in the three years it has used the arbitration agreements at issue, and Plaintiff cannot show that her rights will be substantially impaired by the confidentiality rules.

### C. <u>Severability of Unenforceable Provisions</u>

The Court has concluded that the attorney fee provision and the fee-splitting provisions are unenforceable, that the damage limitation is in effect a nullity because it can have no impact that is not permitted by law, and that the statute of limitations and confidentiality concerns, while possibly objectionable, do not raise significant concerns in this case. In the absence of a severability clause, the attorney fee provision or the fee-splitting provision would be sufficient to find the agreements unenforceable and deny the motion to compel arbitration. *See, e.g., Gambardella*, 218 F. Supp. 2d at 246-47 (attorney fee provision); *Shankle*, 163 F.3d at 1235 (fee-splitting provision). In this case,

the Arbitration Agreements contain the following severability clause: "If, however, any provision of this Arbitration Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, [the employee] agree[s] that this determination shall not affect the validity or enforceability of the remainder of the Agreement, and [the employee] authorize[s] the court making such determination to edit the invalid or unenforceable provision . . . . ." (*See* Def.'s Br. in Support of Mot. to Compel, Attachment 1, Ex. A.) The question becomes whether the Court must, based on the severability clause, sever the unenforceable terms and compel arbitration.[5]

As to the issue of severability, the District of Columbia Circuit has recently stated:

Decisions striking an arbitration clause entirely often involved agreements without a severability clause, *see, e.g., Perez*, 253 F.3d at 1286, or agreements that did not contain merely one readily severable illegal provision, but were instead pervasively infected with illegality, *see, e.g., Graham Oil*, 43 F.3d at 1248-49; *Hooters v. Phillips*, 173 F.3d 933, 938-39 (4th Cir.1999). Decisions severing an illegal provision and compelling arbitration, on the other hand, typically considered agreements with a severability clause and discrete unenforceable provisions, *see, e.g., Morrison*, 317 F.3d at 675; *Gannon*, 262 F.3d at 680.
. . .
If illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts, *see, e.g., Graham Oil*, 43 F.3d at 1248-49, the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties. *Cf. NLRB v. Rockaway News Supply Co.*, 345 U.S. 71, 78, 73 S.Ct. 519, 97 L.Ed. 832 (1953) ("We do not . . .question that there may be cases where a forbidden provision is so basic to the whole scheme of a contract and so interwoven with all its terms that it must stand or fall as an entirety. But . . . [t]he features to which the Board rightly objects not only may be severed but are separated in the contract."). Thus, the more the employer overreaches, the less likely a court will be able to sever the provisions and enforce the clause, a dynamic that creates incentives against the very overreaching [Plaintiff] fears.

*Booker v. Robert Half Int'l*, 413 F.3d 77, 84-85 (D.C. Cir. 2005). Plaintiff argues that severing the

---

[5] This Court has not interpreted *Shankle* to require invalidation of the entire agreement where there is a severability clause. *See Jones v. KOTV*, 01-CV-49-K(J) (unpublished) (severing fee-splitting provision prior to compelling arbitration).

unenforceable aspects of the Arbitration Agreements leaves very little of the agreement in tact. The Court concludes, based on consideration of the Arbitration Agreements as a whole, that the two unenforceable provisions, combined with the three provisions that would normally be problematic but that happen to not have a significant impact on this case, represent an overall attempt "to achieve through arbitration what Congress has expressly forbidden" and an "integrated scheme to contravene public policy." *See Graham Oil*, 43 F.3d at 1249. *See also Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 787-88 (9th Cir. 2002) (declining to sever where "virtually nothing" would be left to the contract and the court would need to rewrite those provisions "according to what we believed was fair and equitable"). Considered as a whole, the Arbitration Agreements here attempt to (1) require a plaintiff to split arbitration fees, (2) to disallow the majority of remedies, including the award of attorneys' fees, allowed under federal discrimination law, (3) to impose a time limit that is shorter, in some instances, than the law allows, and (4) to gain the advantage of the AAA's confidentiality rules. Although Defendant argues that these provisions apply to both parties, do not impose an unfair benefit on Defendant, and that there is certain "saving" language in either the provisions themselves or the AAA rules, the Court concludes that this is precisely the type of arbitration agreement that constitutes an example of "overreaching." Severance is not appropriate because the Court has either found unenforceable or brought into question nearly every provision of the Arbitration Agreements. The Court agrees with the reasoning that "responding to illegal provisions in arbitration agreements by judicially pruning them out leaves employers with every incentive to 'overreach' when drafting such agreements [because] [i]f judges merely sever illegal provisions and compel arbitration, employers would be no worse off for trying to include illegal provisions than if they had followed the law in drafting their agreements in the first place." *See*

*Booker*, 413 F.3d at 83 (explaining policy argument against severance of illegal provisions).[6]

### III. Conclusion

The Court is persuaded that Plaintiff will be deprived of statutory rights if she is compelled to arbitrate the claims asserted in this case and that severance of the unenforceable terms is inappropriate due to the significant overreaching by Defendant in these particular Arbitration Agreements. It is therefore ORDERED that Defendant's Motion to Dismiss Or, In the Alternative, To Stay Proceedings and Compel Arbitration (Dkt. No. 12) is DENIED. The Court GRANTS the joint motion (Dkt. No. 19) and directs the parties to submit a Joint Status Report no later than two weeks from the date of this Order, or by May 10, 2006.

**ORDERED this 26th day of APRIL 2006.**

*/s/ Terence Kern*

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

---

[6] In *Booker*, the court concluded that severance was appropriate because the one unenforceable provision did not "infect the arbitration clause as a whole" *Booker*, 413 F.3d at 85. *Booker* also involved a commercial agreement, which involves inherently different policy considerations than an employer/employee agreement entered as a condition of employment or a promotion.